# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

ASEELAH AL-HAMEED,

               Plaintiff,

vs.

CAROLYN W. COLVIN,
Commissioner of Social Security,

               Defendant.

No. C 13-3009-MWB

MEMORANDUM OPINION AND
ORDER REGARDING REPORT AND
RECOMMENDATION

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**..................................................................... 2
    A.   *Procedural Background* ......................................................... 2
    B.   *ALJ's Findings*................................................................. 3
    C.   *Judge Strand's R&R* ........................................................ 10
         1.   *Discounting Dr. Steele's opinion*...................................... 10
         2.   *Failing to develop the record under Nevland* ....................... 13
         3.   *Relying on an incomplete hypothetical question* ................... 15
    D.   *The Commissioner's Objections* ............................................. 15

II.   **ANALYSIS** ...................................................................... 16
    A.   *Standard of Review*............................................................ 16
    B.   *Discussion*..................................................................... 22
         1.   *Discounting Dr. Steele's opinion*...................................... 22
         2.   *Application of Nevland*................................................. 24

III.  **CONCLUSION** ................................................................. 31

This case is before me on a Report and Recommendation (R&R) (docket no. 15) from Magistrate Judge Leonard Strand recommending that I reverse and remand a decision by the Social Security Commissioner (the Commissioner) denying Plaintiff Aseelah Al-Hameed (Al-Hameed) disability insurance benefits (DIB) and supplemental

security income (SSI) under the Social Security Act. The Commissioner timely filed objections to the R&R. For the reasons discussed below, I adopt Judge Strand's R&R, reverse the Commissioner's decision, and remand this case for further proceedings.

## I. INTRODUCTION

### A. Procedural Background

Judge Strand summarized this case's procedural background as follows:

> Al-Hameed was born in 1967 and was 42 years old on her alleged onset date of April 20, 2009. AR 8, 52. She has past relevant work as a bakery worker, cashier, housekeeper, salad bar worker and stocker. AR 267. She protectively filed her applications for DIB and SSI on April 1, 2010. AR 8. The applications were denied initially and on reconsideration. *Id.* Al-Hameed then requested a hearing, which was conducted January 12, 2012, by Administrative Law Judge (ALJ) Jeffrey Marvel. *Id.* Al-Hameed testified during the hearing, as did a vocational expert (VE). AR 36-50. The ALJ issued a decision denying Al-Hameed's application on February 27, 2012. AR 8-17. On January 5, 2013, the Appeals Council denied Al-Hameed's request for review. AR 1-3. As such, the ALJ's decision is the final decision of the Commissioner. AR 1; *see also* 20 C.F.R. §§ 404.981, 416.1481.

> On February 13, 2013, Al-Hameed commenced an action in this court seeking review of the ALJ's decision. This matter has been referred to me pursuant to 28 U.S.C. § 636(b)(1)(B) for the filing of a report and recommended disposition of the case.

Report and Recommendation 1-2 (docket no. 15). Judge Strand issued his R&R on November 4, 2013, in which he recommended that the ALJ's decision be reversed and remanded for further proceedings (docket no. 15). On November 18, 2013, the Commissioner filed objections to the R&R (docket no. 16). Al-Hameed has filed no response to the Commissioner's objections, and the deadline by which she was required

to file any response has long passed. *See* N.D. Ia. L.R. 72.1 (2011) ("Any response to the objections [to the R&R] must be filed within 7 days after service of the objections."). I must now decide whether to adopt or reject the recommendations in the R&R in light of the Commissioner's objections.

## B.    ALJ's Findings

In his R&R, Judge Strand thoroughly summarized the ALJ's decision. Report and Recommendation 5-12 (docket no. 15). Neither party has objected to this summary, only to Judge Strand's application of the law. I therefore adopt the summary of the ALJ's findings from Judge Strand's R&R, which is set forth below:

> The ALJ made the following findings:
>
> (1)    The claimant has disability insured status under title II of the Social Security Act through June 30, 2014 (20 CFR 404.130(b)).
>
> (2)    The claimant has not engaged in substantial gainful activity since April 20, 2009, the alleged onset date (20 CFR 404.1571 *et seq.,* and 416.971 *et seq.*).
>
> (3)    The claimant has the following severe impairments: degenerative disc disease of the lumbar spine; depression; and alcohol dependence and cocaine dependence, both in remission (20 CFR 404.1520(c) and 416.920(c)).
>
> (4)    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).
>
> (5)    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as

defined in 20 CFR 404.1567(b) and 4l6.967(b) except she: can occasionally balance, stoop, crouch, crawl, kneel and climb; is limited to performing simple, routine, repetitive work, with only occasional contact with the public, co-workers or supervisors; is not able to follow any written instructions; and can tolerate only occasional changes in the work setting.

(6)    The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

(7)    The claimant was born on January 18, 1967, and was 42 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

(8)    The claimant has at least a high school education and is able to communicate in spoken and written English, e.g., testimony and Exhibit 12E (20 CFR 404.1564 and 416.964).

(9)    Transferability of job skills is not an issue in this case because the vocational expert stated all of the claimant's past relevant work is unskilled, Exhibit 20E (20 CFR 404.1568 and 416.968).

(10)    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969 and 416.969(a)).

(11)    The claimant has not been under a disability, as defined in the Social Security Act, from April 20, 2009, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

AR 10-17.  In his Step Two analysis, the ALJ noted that Al-Hameed claims she is unable to work due to back pain and depression.  AR 10.  He then provided a detailed summary of the medical evidence concerning her physical and mental

impairments. AR 10-12. With regard to physical impairments, the ALJ referenced an October 31, 2009, radiology report as finding that Al-Hameed has mild degenerative disc disease. AR 11. He then discussed the results of a consultative examination conducted in August 2010 by Joseph Latella, D.O. *Id.* Dr. Latella found that Al-Hameed had a limited range of motion in the lumbar spine and noted a positive straight leg test on the right side. AR 434-37. Dr. Latella's concluding impressions included asthma, possible multiple sclerosis, back pain due to arthritis, depression and obesity. AR 436. He stated that Al-Hameed was scheduled to have an MRI the following week. *Id.*

The ALJ also noted that James Steele, M.D., had prescribed narcotic pain medication as of November 2010, but records of Al-Hameed's regular medication-management visits with a nurse practitioner during the year 2011 contain no mention of back pain. AR 11. In addition, the ALJ referenced a record from October 25, 2010, in which Al-Hameed is reported to have stated that she had never had an MRI or CAT scan. *Id.*

With regard to mental impairments, the ALJ referenced Al-Hameed's testimony that she suffers from depression and that this causes her to feel untalkative, isolative, sleepy and to have a decreased appetite. *Id.* He noted that she reported to have had no alcohol for the past three years after completing alcohol treatment. *Id.* She also reported that she does not receive mental health counseling but is seen one time each month for a medication check. *Id.* The ALJ also referenced the findings made by Aaron Quinn, Ph. D., a state agency consultant who reviewed available records. *Id.* Dr. Quinn found that Al-Hameed has been treated for depression and anxiety but that her symptoms had stabilized except when exacerbated by psychosocial stressors. AR 430. Dr. Quinn also found that Al-Hameed "would have work-related difficulties with written instructions, stress management, interpersonal functioning, and change." *Id.* However, he also concluded that she is

"able to complete at least simple repetitive tasks on a sustained basis and she would benefit from spoken instructions and not working in crowds of people." *Id.*

Based on the medical evidence, the ALJ concluded that the following impairments were severe: degenerative disc disease of the lumbar spine, depression and alcohol dependence and cocaine dependence (both in remission). AR 10. He also found that two additional impairments – asthma and iron deficiency anemia – were not severe. AR 12. Al-Hameed does not challenge this finding.

Moving to Step Three, the ALJ found that none of Al-Hameed's impairments, individually or in combination, met or equaled one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. AR 12-13. With regard to her physical impairment of degenerative disc disease, the ALJ found that neither the diagnostic criteria nor the functional manifestations met the requirements of Listing 1.04A-C. AR 13. Al-Hameed does not challenge this finding.

As for her mental impairments, the ALJ found that whether considered individually or in combination, they did not satisfy either Listing 12.04 (affective disorders) or 12.09B (substance abuse). *Id.* He first analyzed the "paragraph B" criteria, noting that to satisfy these criteria the impairments must cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation.[1] *Id.* A "marked" limitation is

---

[1] Episodes of decompensation are "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace." 20 CFR Part 404, Subpart P, Appendix 1. Repeated episodes of decompensation, each of extended duration, means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks. If the episodes of decompensation are more frequent and of shorter duration or less frequent and of longer duration, the Commissioner must "use judgment to determine if the duration and functional effects of the episodes are of equal severity and may be used to substitute for the listed finding in a determination of equivalence." *Id.*

one that is more than moderate but less than extreme. *Id.* The ALJ found that Al-Hameed had mild difficulties in activities of daily living, with moderate difficulties in social functioning and with regard to concentration, persistence or pace. *Id.* The ALJ also found that Al-Hameed had experienced no episodes of decompensation which have been of extended duration. *Id.* Therefore, the ALJ found the paragraph B criteria were not satisfied. *Id.* He also stated that he had considered the "paragraph C" criteria and that the evidence failed to establish those criteria, as well. *Id.* Al-Hameed does not challenge any of these findings.

At Step Four, the ALJ provided a residual functional capacity (RFC) assessment and found that Al-Hameed had the RFC to perform light work[2] with the following limitations: (a) she can only occasionally balance, stoop, crouch, crawl, kneel and climb, (b) she is limited to performing simple, routine, repetitive work, (c) she can have only occasional contact with the public, co-workers or supervisors, (d) she is not able to follow any written instructions and (e) she can tolerate only occasional changes in the work setting. AR 13-15. In explaining this determination, the ALJ first addressed the credibility of Al-

---

[2] "Light work" is defined in the Commissioner's regulations as follows:

Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b) and 416.967(b).

Hameed's statements concerning the disabling effects of her impairments. AR 14. He referenced the relevant factors for weighing a claimant's credibility and found it to be significant that Al-Hameed stopped working because her employer went out of business, not because of her impairments. *Id.* He noted that she nonetheless elected to use her last date of employment as her alleged onset date. *Id.*

The ALJ further explained his credibility finding by stating that the medications Al-Hameed takes are effective, according to the medical records, and do not cause side effects. *Id.* He also found that she suffers from situational stressors that are not related to her impairments, including an abusive boyfriend and a daughter who has medical issues. *Id.* The ALJ noted that while Al-Hameed does not drive, this is due to having a suspended license, not because of her impairments. *Id.* He also referenced her testimony that she walks six blocks each direction to shop at a grocery store and is able to carry home one or two bags of groceries in each hand. *Id.* He noted that Al-Hameed cooks and that she socializes at a community center where she is able to use a computer and watch television. *Id.* Finally, he made reference to evidence that Al-Hameed did not follow through on a referral to have an MRI scan performed on her back. *Id.*

For these reasons, the ALJ found that Al-Hameed's allegations of disability were not fully credible to the extent that they were not consistent with the ALJ's findings as to her RFC. *Id.* He then addressed a third-party statement submitted by Al-Hameed's sister. He noted that it was "somewhat, but not entirely, consistent with" Al-Hameed's statements. *Id.* For example, the third-party statement contradicted Al-Hameed's claims of being untalkative and isolative. AR 15. In any event, the ALJ deemed that the third-party statement was credible only to the extent that it was consistent with his RFC determination. *Id.*

The ALJ next discussed the medical opinion evidence. He discussed "a representative-obtained statement from James Steele, M.D., a treating physician," which the ALJ found "is not supported by the objective evidence or findings on examination, and which impresses as exaggerated." *Id.* He found the opinion to be exaggerated because, among other things, Dr. Steele stated that Al-Hameed could "never" lift and carry ten pounds. AR 15. The ALJ found this to be inconsistent with Al-Hameed's testimony about carrying grocery bags and her sister's statement that Al-Hameed can lift "only 20 pounds." *Id.* The ALJ also stated that Dr. Steele's opinions were not supported by objective evidence or his findings during examinations and that Dr. Steele had not specified the method by which he arrived at the limitations he assessed. *Id.* For these reasons, the ALJ elected to give Dr. Steele's opinions no weight. *Id.*

The ALJ then discussed a "representative-provided opinion" from B.J. Thomas, a nurse practitioner. *Id.* He criticized Thomas for not referencing alcohol and chemical abuse in her DSM-IV summary, despite noting those diagnoses in her treatment records. *Id.* He also observed that Thomas "supplied a plethora of check mark affirmatives of symptoms that do not appear in her office records." *Id.* He stated that her opinions were subject to being discredited because they include limitations that do not appear in the treatment records and are not supported by objective testing or reasoning. *Id.* He concluded that her opinions were entitled to no weight.

Finally, the ALJ stated that he afforded "some weight" to the opinions of the state agency consultants, "to the extent their opinions are consistent with the above residual functional capacity assessment." *Id.* He concluded that his RFC determination was supported by the evidence as a whole. *Id.*

Next, the ALJ found that the limitations incorporated into Al-Hameed's RFC will prevent her from performing

any of her past relevant work. *Id.* This finding was based on the VE's testimony. *Id.* This required the ALJ to proceed to Step Five and determine whether Al-Hameed is able to perform other jobs that exist in significant numbers in the national economy. AR 16. Based on the VE's answers to hypothetical questions that incorporated Al-Hameed's age, education, work experience and RFC, the ALJ found the answer to be "yes." *Id.* The VE's testimony indicated that AL-Hameed was capable of performing such positions as folder, pricer and cleaner, and that these positions exist in significant numbers. AR 45-46. As such, the ALJ concluded that Al-Hameed was not disabled within the meaning of the Act. AR 17.

Report and Recommendation 5-12 (docket no. 15).

## C.     Judge Strand's R&R

In his R&R, Judge Strand recommends that I reverse and remand the Commissioner's decision denying Al-Hameed benefits for three reasons: (1) the ALJ failed to give good reasons for discounting the opinion of one of Al-Hameed's treating doctors, (2) the ALJ failed to properly develop the record, and (3) the ALJ may have relied on an incomplete hypothetical question posed to the testifying vocational expert (VE). I will discuss each of these reasons in turn.

### 1.     Discounting Dr. Steele's opinion

Judge Strand held that the ALJ did not articulate a good reason for giving "no weight" to the opinion of Dr. Steele, one of Al-Hameed's treating physicians. Dr. Steele provided a number of opinions favorable to Al-Hameed, one of which was that Al-Hameed could "never" lift and carry ten pounds. AR 646. Because Dr. Steele is a treating doctor, his opinion is generally entitled to controlling weight, unless the ALJ provides good reasons for discounting it. *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (treating doctor generally entitled to controlling weight); *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007) (ALJ should give good reasons for discounting a treating

doctor).   Here, the ALJ gave Dr. Steele's opinion no weight, and provided three reasons for doing so:   (1) that the objective evidence did not support Dr. Steele's opinions, (2) that Dr. Steele's opinions were exaggerated, and (3) that Dr. Steele did not state the method by which he arrived at his opinions on Al-Hameed's limitations.

Judge Strand found that none of these stated reasons constitutes a "good reason" for discounting Dr. Steele's opinions.   First, Judge Strand noted that the ALJ offered no analysis explaining what objective evidence contradicted Dr. Steele's opinions.   The ALJ merely stated that "the undersigned finds [that Dr. Steele's opinion] is not supported by the objective evidence or findings on examination" without offering any particular examples from the record evidence.   AR 15.   Upon reviewing the evidence, Judge Strand could not locate any "objective evidence" that would justify completely disregarding Dr. Steele's opinion.   To the contrary, Judge Strand summarized the record evidence, related to Dr. Steele, supporting Al-Hameed's claims:

> [Dr. Steele] saw Al-Hameed on November 5, 2009, to follow up on an emergency room visit for back pain.  AR 367.  He saw her again on December 22, 2009, for back pain and began prescribing medications to attempt to alleviate the pain, including narcotic pain medications.  AR 364.  In February 2010, he noted that she had worsening low back pain with sciatic pain.  AR 463.  On February 26, 2010, he reported that Al-Hameed "has a diagnosis of arthritis in her back."  AR 363, 470.  On March 2, 2010, he found that her back pain was not improving and he referred her for an MRI and a back surgeon consult (which, apparently, did not happen for some reason).  AR 469.  On May 4, 2010, Al-Hameed saw Dr. Steele after again visiting the emergency room for back pain.  AR 537.  He prescribed Tramadol and wrote that he would "start the process of referral to UIHC for the worsening low back pain."  *Id.* On July 16, 2010, Dr. Steele wrote that Al-Hameed was waiting for an appointment at UIHC Department of

> Orthopedic Surgery.  AR 465.  He diagnosed her as having
> "acute exacerbation of chronic thoracic lumbar pain."  *Id.*

Report and Recommendation 16-17 (docket no. 15).  Because the ALJ provided no explanation for his conclusion that Dr. Steele's opinion is inconsistent with the record evidence, Judge Strand held that the ALJ's first reason for discounting Dr. Steele's opinion was not a "good reason."

Second, Judge Strand held that the ALJ did not provide a good reason for concluding that Dr. Steele exaggerated by reporting that Al-Hameed could "never" lift or carry ten pounds.  The ALJ determined that Dr. Steele exaggerated his opinion because it contradicted Al-Hameed's testimony that she could lift groceries and Al-Hameed's sister's suggestion that Al-Hameed could lift "only 20 pounds."  But, as Judge Strand noted, Dr. Steele did not opine that Al-Hameed could "never" lift ten pounds under any circumstances.  Rather, Dr. Steele opined that Al-Hameed could never lift and carry ten pounds "*in a competitive work situation.*"  AR 646 (emphasis added).  Dr. Steele did state, however, that Al-Hameed could "occasionally"—meaning up to 2 hours and 40 minutes per workday—lift and carry less than ten pounds at work.  AR 646.  Because Al-Hameed's ability to sometimes lift groceries or 20 pounds outside of the workplace did not conflict with Dr. Steele's more specific conclusion that Al-Hameed could never lift ten pounds regularly in the workplace, Judge Strand concluded that the ALJ's second reason for discounting Dr. Steele's opinion was not a "good reason."

Finally, Judge Strand rejected the ALJ's third reason for discounting Dr. Steele: that "Dr. Steele did not specify by what method he had arrived at the limitations he assessed."  AR 15.  The ALJ did not explain what he meant by this statement, nor did he suggest what "method" he would have found sufficient to justify Dr. Steele's opinion.  But, regardless, Judge Strand noted that, based on Dr. Steele's answers in his

opinion questionnaire, "it is rather clear that Dr. Steele's opinions concerning Al-Hameed's capabilities were based on his repeated examinations of her over the previous eighteen months." Report and Recommendation 19 (docket no. 15). Thus, Judge Strand held that the ALJ's third reason for discounting Dr. Steele's opinions was not a "good reason."

Still, while Judge Strand held that the ALJ failed to give good reasons for discounting Dr. Steele's opinions, Judge Strand also noted that good reasons may yet exist. But the ALJ must provide them. Thus, Judge Strand held that, "[i]f an ALJ is going to give absolutely no weight to the medical opinions provided by a treating physician, he or she must provide an explanation that contains far more detail and precision than the one provided in this case." Report and Recommendation 19-20 (docket no. 15).

### 2. *Failing to develop the record under Nevland*

Judge Strand also recommended reversal and remand based on the ALJ's failure to develop the record, as required under *Nevland v. Apfel*, 204 F.3d 853 (8th Cir. 2000). Judge Strand observed that the record "contains no medical opinions from any treating or examining source concerning Al-Hameed's mental RFC during the period of her alleged disability." Report and Recommendation 22 (docket no. 15). Despite this, the ALJ found that Al-Hameed was not disabled at Step 5 of the ALJ's sequential evaluation. Judge Strand concluded that, before making this Step-5 determination, the ALJ should have "fully and fairly develop[ed] the record by obtaining a medical opinion, either from a treating physician or via a consultative examination, as to Al-Hameed's mental RFC in light of her severe mental impairments." Report and Recommendation 24 (docket no. 15).

Judge Strand based his conclusion on *Nevland*. In *Nevland*, like here, the ALJ denied a claimant benefits at Step 5 without obtaining a medical opinion from a treating

source.  204 F.3d at 858.  The Eighth Circuit Court of Appeals held that doing so violated the ALJ's duty to develop the administrative record, causing the ALJ to rely only on non-treating sources, whose opinions ordinarily do not constitute substantial evidence:

> In the case at bar, there is no *medical* evidence about how Nevland's impairments affect his ability to function now. The ALJ relied on the opinions of non-treating, non-examining physicians who reviewed the reports of the treating physicians to form an opinion of Nevland's RFC. In our opinion, this does not satisfy the ALJ's duty to fully and fairly develop the record. The opinions of doctors who have not examined the claimant ordinarily do not constitute substantial evidence on the record as a whole. *Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Likewise, the testimony of a vocational expert who responds to a hypothetical based on such evidence is not substantial evidence upon which to base a denial of benefits. *Id.* In our opinion, the ALJ should have sought such an opinion from Nevland's treating physicians or, in the alternative, ordered consultative examinations, including psychiatric and/or psychological evaluations to assess Nevland's mental and physical residual functional capacity.

*Id.*  The court in *Nevland* thus reversed and remanded the case for further proceedings consistent with its opinion.  *Id.*

Like the court in *Nevland*, Judge Strand noted that the ALJ in this case "relied on the opinions of non-examining state agency consultants in evaluating Al-Hameed's RFC and in formulating a hypothetical question to the VE" at Step 5, and, therefore, substantial evidence does not support the ALJ's decision (docket no. 15, at 24).  Thus, Judge Strand recommends that I reverse the Commissioner's decision and remand this case for further proceedings.

### 3.    Relying on an incomplete hypothetical question

Finally, Judge Strand noted that, given the ALJ's failure to (1) provide good reasons for discounting Dr. Steele and (2) develop the record as to Al-Hameed's mental RFC, the ALJ may have formulated an incomplete hypothetical question to the VE. When a hypothetical question fails to include all relevant impairments, the VE's answer to that question does not constitute substantial evidence. *Pickney v. Chater*, 96 F.3d 294, 296 (8th Cir. 1996). Thus, Judge Strand noted that, in addressing the ALJ's failures noted above, the ALJ will need to reevaluate Al-Hameed's RFC. If that process changes the ALJ's findings concerning Al-Hameed's RFC, "then the ALJ will have to determine whether it is necessary to obtain additional VE testimony based on the reformulated RFC." Report and Recommendation 25 (docket no. 15).

### D.    The Commissioner's Objections

The Commissioner raises three arguments in objection to Judge Strand's R&R. First, the Commissioner argues that the ALJ properly gave Dr. Steele's opinion no weight. In particular, the Commissioner argues that "[t]he objective medical findings, including those in Dr. Steele's treatment records, demonstrated minimal findings [of disability] in most examinations" (docket no. 16, at 3). The Commissioner then summarizes the record evidence that the Commissioner claims supports the ALJ's decision to give Dr. Steele's opinion no weight. The Commissioner also argues that the ALJ should be free to discount Dr. Steele's opinion based on Dr. Steele's claim that Al-Hameed can "never" lift and carry ten pounds, which the Commissioner claims is exaggerated and inconsistent with Al-Hameed's own reports of her abilities.

Second, the Commissioner argues that Judge Strand incorrectly concluded that *Nevland* compels reversal and remand. Specifically, the Commissioner argues that *Nevland* has been superseded by post-*Nevland* clarifications in Social Security regulations. According to the Commissioner, Judge Strand's application of *Nevland*,

which requires the Commissioner to attempt to develop a claimant's medical record in certain cases, improperly places the burden of proving Al-Hameed's RFC on the Commissioner, rather than on Al-Hameed.

Finally, the Commissioner argues that *Nevland* is inapposite because the record here left no crucial issue undeveloped "and there was sufficient evidence to determine whether [Al-Hameed] was disabled" (docket no. 16, at 13). The Commissioner argues that the ALJ relied on "[Al-Hameed's] mental health treatment records, an opinion from [Al-Hameed's] treating nurse practitioner . . . and the opinions of two State agency psychological consultants," which together constitute substantial evidence supporting the ALJ's findings (docket no. 16, at 13).

I must now determine whether to accept or reject Judge Strand's R&R in light of the Commissioner's objections.

## II.    *ANALYSIS*

### A.    *Standard of Review*

I review Judge Strand's R&R under the statutory standards found in 28 U.S.C. § 636(b)(1):

> A judge of the court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

28. U.S.C. § 636(b)(1) (2006); *see* Fed. R. Civ. P. 72(b) (stating identical requirements); N.D. Ia. L.R. 72, 72.1 (allowing the referral of dispositive matters to a magistrate judge but not articulating any standards to review the magistrate judge's

report and recommendation).  While examining these statutory standards, the United States Supreme Court explained:

> Any party that desires plenary consideration by the Article III judge of any issue need only ask.  Moreover, while the statute does not require the judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard.

*Thomas v. Arn*, 474 U.S. 140, 154 (1985).  Thus, a district court may review *de novo* any issue in a magistrate judge's report and recommendation at any time.  *Id.*  If a party files an objection to the magistrate judge's report and recommendation, however, the district court *must* "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1).  In the absence of an objection, the district court is not required "to give any more consideration to the magistrate's report than the court considers appropriate."  *Thomas*, 474 U.S. at 150.

*De novo* review, of course, is nondeferential and generally allows a reviewing court to make an "independent review" of the entire matter.  *Salve Regina College v. Russell*, 499 U.S. 225, 238 (1991) (noting also that "[w]hen *de novo* review is compelled, no form of appellate deference is acceptable"); *see Doe v. Chao*, 540 U.S. 614, 620-19 (2004) (noting *de novo* review is "distinct from any form of deferential review").  The *de novo* review of a magistrate judge's report and recommendation, however, only means a district court "'give[s] fresh consideration to those issues to which specific objection has been made.'"  *United States v. Raddatz*, 447 U.S. 667, 675 (1980) (quoting H.R. Rep. No. 94-1609, at 3, *reprinted in* 1976 U.S.C.C.A.N. 6162, 6163 (discussing how certain amendments affect 28 U.S.C. § 636(b))).  Thus, while *de novo* review generally entails review of an entire matter, in the context of § 636 a district court's *required de novo* review is limited to "*de novo*

determination[s]" of only "those portions" or "specified proposed findings" to which objections have been made. 28 U.S.C. § 636(b)(1); *see Thomas*, 474 U.S. at 154 ("Any party that desires plenary consideration by the Article III judge of any issue need only ask."). Consequently, the Eighth Circuit Court of Appeals has indicated *de novo* review would only be required if objections were "specific enough to trigger *de novo* review." *Branch v. Martin*, 886 F.2d 1043, 1046 (8th Cir. 1989). Despite this "specificity" requirement to trigger *de novo* review, the Eighth Circuit Court of Appeals has "emphasized the necessity . . . of retention by the district court of substantial control over the ultimate disposition of matters referred to a magistrate." *Belk v. Purkett*, 15 F.3d 803, 815 (8th Cir. 1994). As a result, the Eighth Circuit Court of Appeals has been willing to "liberally construe[]" otherwise general pro se objections to require a *de novo* review of all "alleged errors," *see Hudson v. Gammon*, 46 F.3d 785, 786 (8th Cir. 1995), and to conclude that general objections require "full *de novo* review" if the record is concise. *Belk*, 15 F.3d at 815 ("Therefore, even had petitioner's objections lacked specificity, a *de novo* review would still have been appropriate given such a concise record."). Even if the reviewing court must construe objections liberally to require *de novo* review, it is clear to this court that there is a distinction between making an objection and making no objection at all. *See Coop. Fin. Assoc., Inc. v. Garst*, 917 F. Supp. 1356, 1373 (N.D. Iowa 1996) ("The court finds that the distinction between a flawed effort to bring objections to the district court's attention and no effort to make such objections is appropriate."). Therefore, I will strive to provide *de novo* review of all issues that might be addressed by any objection, whether general or specific, but will not feel compelled to give *de novo* review to matters to which no objection at all has been made.

In the absence of any objection, the Eighth Circuit Court of Appeals has indicated a district court should review a magistrate judge's report and recommendation

under a clearly erroneous standard of review. *See Grinder v. Gammon*, 73 F.3d 793, 795 (8th Cir. 1996) (noting when no objections are filed and the time for filing objections has expired, "[the district court judge] would only have to review the findings of the magistrate judge for clear error"); *Taylor v. Farrier*, 910 F.2d 518, 520 (8th Cir. 1990) (noting the advisory committee's note to Fed. R. Civ. P. 72(b) indicates "when no timely objection is filed the court need only satisfy itself that there is no clear error on the face of the record"); *Branch*, 886 F.2d at 1046 (contrasting *de novo* review with "clearly erroneous standard" of review, and recognizing *de novo* review was required because objections were filed). The United States Supreme Court has stated that the "foremost" principle under the "clearly erroneous" standard of review "is that '[a] finding is "clearly erroneous" when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City*, 470 U.S. 564, 573-74 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)). Thus, the clearly erroneous standard of review is deferential, *see Dixon v. Crete Medical Clinic, P.C.*, 498 F.3D 837, 847 (8th Cir. 2007) (noting a finding is not clearly erroneous even if another view is supported by the evidence), but a district court may still reject the magistrate judge's report and recommendation when the district court is "left with a definite and firm conviction that a mistake has been committed." *U.S. Gypsum Co.*, 333 U.S. at 395.

Even though some "lesser review" than *de novo* is not "positively require[d]" by statute, *Thomas*, 474 U.S. at 150, Eighth Circuit precedent leads me to believe that a clearly erroneous standard of review should generally be used as the baseline standard to review all findings in a magistrate judge's report and recommendation that are not objected to or when the parties fail to file any timely objections, *see Grinder*, 73 F.3d at 795; *Taylor*, 910 F.2d at 520; *Branch*, 886 F.2d at 1046; see also Fed. R. Civ. P.

72(b) advisory committee's note ("When no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."). In the context of the review of a magistrate judge's report and recommendation, I believe one further caveat is necessary: a district court always remains free to render its own decision under *de novo* review, regardless of whether it feels a mistake has been committed. *See Thomas*, 474 U.S. at 153-54. Thus, while a clearly erroneous standard of review is deferential and the minimum standard appropriate in this context, it is not mandatory, and I may choose to apply a less deferential standard.[3]

---

[3] The Eighth Circuit Court of Appeals, in the context of a dispositive matter originally referred to a magistrate judge, does not review a district court's decision in similar fashion. The Eighth Circuit Court of Appeals will either apply a clearly erroneous or plain error standard to review factual findings, depending on whether the appellant originally objected to the magistrate judge's report and recommendation. *See United States v. Brooks*, 285 F.3d 1102, 1105 (8th Cir. 2002) ("Ordinarily, we review a district court's factual findings for clear error . . . . Here, however, the record reflects that [the appellant] did not object to the magistrate's report and recommendation, and therefore we review the court's factual determinations for plain error." (citations omitted)); *United States v. Looking*, 156 F.3d 803, 809 (8th Cir. 1998) ("[W]here the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error."). The plain error standard of review is different than a clearly erroneous standard of review, *see United States v. Barth*, 424 F.3d 752, 764 (8th Cir. 2005) (explaining the four elements of plain error review), and ultimately the plain error standard appears to be discretionary, as the failure to file objections technically waives the appellant's right to appeal factual findings. *See Griffini v. Mitchell*, 31 F.3d 690, 692 (8th Cir. 1994) (stating an appellant who did not object to the magistrate judge's report and recommendation waives his or her right to appeal factual findings, but then choosing to "review[] the magistrate judge's findings of fact for plain error"). An appellant does not waive his or her right to appeal questions of law or mixed questions of law and fact by failing to object to the magistrate judge's report and recommendation. *United States v. Benshop*, 138 F.3d 1229, 1234 (8th Cir. 1998) ("The rule in this circuit is that a failure to object to a magistrate judge's report

Here, the Commissioner has objected to some of Judge Strand's findings. Although I will review these findings *de novo*, and Judge Strand's other findings for clear error, I review the Commissioner's decision to determine whether the correct legal standards were applied and "whether the Commissioner's findings are supported by substantial evidence in the record as a whole." *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007) (citing *Haggard v. Apfel*, 175 F.3d 591, 594 (8th Cir. 1999)). Under this deferential standard, "[s]ubstantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002); *see also Page*, 484 F.3d at 1042 ("Substantial evidence is relevant evidence which a reasonable mind would accept as adequate to support the Commissioner's conclusion." (quoting *Haggard*, 175 F.3d at 594)). "If, after review, [the court] find[s] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the denial of benefits." *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008) (quoting *Mapes v. Chater*, 82 F.3d 259, 262 (8th Cir. 1996)). Even if the court would have "'weighed the evidence differently,'" the Commissioner's decision will not be disturbed unless "it falls outside the available 'zone of choice.'" *Nicola v. Astrue*, 480 F.3d 885, 886 (8th Cir. 2007) (quoting *Hacker v. Barnhart*, 459 F.3d 934, 936 (8th Cir. 2006)).

---

and recommendation will not result in a waiver of the right to appeal '"when the questions involved are questions of law or mixed questions of law and fact."' (quoting *Francis v. Bowen*, 804 F.2d 103, 104 (8th Cir. 1986), in turn quoting *Nash v. Black*, 781 F.2d 665, 667 (8th Cir. 1986))). In addition, legal conclusions will be reviewed *de novo*, regardless of whether an appellant objected to a magistrate judge's report and recommendation. *See, e.g.*, *United States v. Maxwell*, 498 F.3d 799, 801 n.2 (8th Cir. 2007) ("In cases like this one, 'where the defendant fails to file timely objections to the magistrate judge's report and recommendation, the factual conclusions underlying that defendant's appeal are reviewed for plain error.' We review the district court's legal conclusions *de novo*." (citation omitted)).

## B.    Discussion

### 1.    *Discounting Dr. Steele's opinion*

In response to Judge Strand's finding that the ALJ did not provide good reasons for discounting Dr. Steele's opinions, the Commissioner argues that substantial record evidence supports the ALJ's decision to give Dr. Steele's opinions "no weight." In particular, the Commissioner points out the following:

> Although plaintiff alleges disability beginning in April 2009, the first report of back pain in the record is in October 2009, and that pain reportedly commenced only one week earlier (Tr. 272-87). X-rays consistently showed only mild degenerative changes in the lumbar spine (Tr. 277, 618). Physical examinations during emergency room treatment and by Dr. Steele noted plaintiff's reports of tenderness in the low back, antalgic gait, and occasionally a positive straight leg raise test or muscle spasm (Tr. 276, 362, 367, 380, 465, 467, 469, 474, 535, 537, 597, 608, 617). At a consultative examination with Dr. Latella, plaintiff had normal gait, positive straight leg raise on the right, normal sensation, and limitation of motion of the lumbar spine (Tr. 435-37). These reported findings are consistent with the ALJ's finding that plaintiff had a severe back impairment, and with the ALJ's finding limiting plaintiff to performing light exertional work with only occasional postural activities (balancing, stooping, crouching, crawling, kneeling, climbing) (Tr. 10, 13). However, these relatively minimal findings treated with medication and not with any more intensive treatment measures are not consistent with Dr. Steele's opinion regarding plaintiff's limitations (Tr. 643-47).
>
> Further, Dr. Steele's treatment notes never included any work limitations, despite the fact that plaintiff was looking for work during at least some of the time that Dr. Steele was treating her. Dr. Steele further included in his opinion a statement about side effects of medication that were not noted during any examination (Tr. 643).

(Docket no. 16, at 3-4). To be clear, the evidence the Commissioner cites may well provide good reasons for discounting Dr. Steele's opinions. But the fact remains: the ALJ did not discuss any of it. It is the ALJ's duty—not the Commissioner's lawyer's or the Court's—to provide good reasons for discounting a treating doctor's opinion. Given the current record, I have no way of determining whether the ALJ relied on some, all, or none of the evidence cited above. If I were to now hold that the evidence cited above is sufficient to retroactively justify the ALJ's decision, I would be weighing the evidence and making credibility determinations, which are powers reserved for the ALJ. *Loving v. Dep't of Health & Human Servs., Sec'y*, 16 F.3d 967, 969 (8th Cir. 1994) ("It is not the role of this court to reweigh the evidence presented to the ALJ or to try the issue in this case de novo."); *Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("Where adequately explained and supported, credibility findings are for the ALJ to make."). Thus, I find that remand is appropriate so that the ALJ can determine whether good reasons exist for discounting Dr. Steele's opinions.

The Commissioner alternatively argues that the ALJ was free to conclude that Dr. Steele's opinion that Al-Hameed could "never" lift ten pounds was "exaggerated" because it contradicted Al-Hameed's testimony about lifting groceries and Al-Hameed's sister's suggestion that Al-Hameed could lift 20 pounds. According to the Commissioner, while there may be other interpretations of Dr. Steele's opinion, "it was not unreasonable for the ALJ to find that the doctor's opinion . . . was inconsistent with the evidence of record . . ." (docket no. 16, at 5). Even if Dr. Steele's opinion that Al-Hameed can "never" lift ten pounds "in a competitive work situation" were subject to multiple interpretations, the ALJ still needs a good reason for picking an interpretation that discounts Dr. Steele's opinion over one that bolsters it. Here, that reason appears to be the alleged inconsistency between Dr. Steele's opinion and the evidence of Al-Hameed's grocery lifting and her sister's suggestion that Al-Hameed can lift 20 pounds.

That is not a "good reason." There is no reasonable interpretation of Dr. Steele's opinion questionnaire that puts it at odds with Al-Hameed's and her sister's "lifting" testimony. Dr. Steele offered an opinion about Al-Hameed's lifting and carrying restrictions "in a competitive work situation" as part of a questionnaire that asks: "As a result of your patient's impairments, estimate your patient's functional limitations if your patient were placed in a *competitive work situation*[.]" AR 644, 646. The fact that Al-Hameed lifts groceries occasionally, or that her sister thinks she can lift 20 pounds simply does not speak to what restrictions Al-Hameed has on lifting and carrying, day-to-day, in a work environment. Judge Strand said it best: "Contrasting [Dr. Steele's] opinion with a one-time-per-month grocery shopping excursion is absurd." Report and Recommendation 18 (docket no. 15). Thus, I conclude that the ALJ failed to provide good reasons for discounting Dr. Steele's opinion, and remand is appropriate.

### 2. *Application of Nevland*

The Commissioner also objects to Judge Strand's finding that remand is appropriate under *Nevland*. Judge Strand noted that the record contains no "treating or examining source's medical opinion about the nature and severity of Al-Hameed's mental impairments during the relevant period of time, including her symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions." Report and Recommendation 22 (docket no. 15). In *Nevland*, the Eighth Circuit Court of Appeals held that remand was appropriate where "there [was] no *medical* evidence about how [a claimant's] impairments affect his ability to function now." 204 F.3d at 858. The court in *Nevland* also held that "the ALJ should have sought [a medical] opinion from [the claimant's] treating physicians or . . . ordered consultative examinations, including psychiatric and/or psychological evaluations to assess [the claimant's] mental . . . residual functional capacity" before

finding the claimant was not disabled at Step 5. *Id.* Because the ALJ similarly failed to develop the record of Al-Hameed's mental RFC, yet still found Al-Hameed was not disabled at Step 5, Judge Strand held that *Nevland* compelled remand.

The Commissioner argues that, by requiring the ALJ to obtain additional medical opinions under *Nevland*, the R&R incorrectly places the burden of proving Al-Hameed's RFC on the Commissioner when it should be on Al-Hameed. The Commissioner's argument is based, in part, on how *Nevland* applies in the context of the ALJ's five-step, sequential evaluation process. In any social security case, the ALJ follows a five-step process to determine if a claimant is disabled.

> During the five-step process, the ALJ considers (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590 (8th Cir. 2004) (further citations omitted)). If a claimant does not meet the criteria at any step, the process ends and the ALJ must find that the claimant is not disabled. *Id.*

The claimant bears the burden of proof—including both the burdens of production and persuasion—through Step 4. 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003). Because the ALJ determines a claimant's RFC at or before Step 4, the claimant bears the burden of proving his or her RFC. *See id.* (noting that the ALJ will "assess your RFC once . . . after step 3 but before . . . step 4"); *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (noting that a claimant's "RFC is determined at step four, where the burden of proof rests with the claimant"). If the ALJ's evaluation

proceeds to Step 5, the burden of production, but not persuasion, shifts to the Commissioner. *Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) ("The Commissioner recently promulgated a new rule designed to clarify that although a burden of production shifts to the Commissioner at step five, the ultimate burden of persuasion remains with the claimant." (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)). At Step 5, the Commissioner's burden is twofold: "The Commissioner must [] prove, first that the claimant retains the RFC to do other kinds of work, and, second that other work exists in substantial numbers in the national economy that the claimant is able to perform." *Eichelberger*, 390 F.3d at 591; *see also Nevland*, 204 F.3d at 857. Here, it is undisputed that the ALJ proceeded to Step 5. The Commissioner, therefore, bore the burden to produce evidence that Al-Hameed (1) retains the RFC to do other kinds of work that (2) exists in substantial numbers in the national economy.

The Commissioner's argument that Judge Strand's application of *Nevland* wrongly shifts the burden of proving Al-Hameed's RFC to the Commissioner is unavailing for a few reasons. First, the Commissioner's argument incorrectly suggests that *Nevland*, decided in 2000, is no longer good law after the Social Security Administration clarified, in 2003, that a claimant's RFC is determined "after step 3 but before . . . step 4" when the claimant bears the burden of proof. 68 Fed. Reg. 51154-55. As is discussed below, I do not think that applying *Nevland*'s holding alters the Commissioner's burden. Moreover, the Eighth Circuit Court of Appeals has not overruled *Nevland*. To the contrary, the Eighth Circuit Court of Appeals has cited *Nevland* multiple times since 2003 without overruling it. *See, e.g.*, *Casey v. Astrue*, 503 F.3d 687, 697 (8th Cir. 2007) (noting that "*Nevland* addressed the evidence necessary to satisfy an ALJ's burden of proof at step five in the disability analysis"); *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004) (noting that in "*Nevland* . . . we reversed an ALJ's decision because he relied on non-treating, non-examining

physicians who formed an opinion solely by reviewing the reports of treating physicians").

Second, the Commissioner's argument seems to mistakenly conflate Al-Hameed's Step-3 burden with the Commissioner's Step-5 burden. The Commissioner is correct that Al-Hameed bears the burden of proving her RFC. A claimant's RFC is defined as "the most you can still do despite your limitations." 20 C.F.R. § 404.1545. Thus, at Step 3, Al-Hameed bore the burden to prove what she could still do despite her physical or mental limitations. But, at Step 5, the Commissioner bore the burden of producing evidence that, given Al-Hameed's RFC, Al-Hameed could do work that exists in substantial numbers in the national economy. In other words, the Commissioner's burden was to produce evidence of jobs that fit Al-Hameed's RFC. *See Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983) ("[O]nce the claimant's capabilities are established, the Secretary has the burden to demonstrate that there are jobs available in the national economy that can realistically be performed by someone with the claimant's qualifications and capabilities."). Requiring the Commissioner to prove the existence of *jobs* a claimant can do consistent with the claimant's RFC is not the same as requiring the Commissioner to prove the claimant's RFC. Thus, Judge Strand's recommendation that the ALJ obtain additional evidence before making her Step-5 determination does not shift the burden of proving Al-Hameed's RFC to the Commissioner.

Finally, and most importantly, the R&R relies on a portion of *Nevland* that discusses the ALJ's duty to develop the record, which exists independent of a claimant's burden of proof. "It is [] well settled law that it is the duty of the ALJ to fully and fairly develop the record, even when, as in this case, the claimant is represented by counsel." *Nevland*, 204 F.3d at 857 (citing *Warner v. Heckler*, 722 F.2d 428, 431 (8th Cir. 1983)). The ALJ's duty to develop the record includes

"arranging for consultative examinations, if necessary, and making every reasonable effort to get medical reports from [a claimant's] own medical sources." 68 Fed. Reg. 51153, 51155. "Because the social security disability hearing is non-adversarial . . . the ALJ's duty to develop the record *exists independent of the claimant's burden in the case.*" *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) (citing *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004)) (emphasis added).

But, "[w]hile the ALJ has an independent duty to develop the record in a social security disability hearing, the ALJ is not required 'to seek additional clarifying statements from a treating physician unless a crucial issue is undeveloped.'" *Goff*, 421 F.3d at 791 (quoting *Stormo*, 377 F.3d at 806). For example, an ALJ must seek additional information from treating doctors if "the doctors' records [are] inadequate, unclear, or incomplete," or if "the doctors used unacceptable clinical and laboratory techniques." *Id.* (citing 20 C.F.R. §§ 404.1512(e), 416.912(e)). On the other hand, "an ALJ is permitted to issue a decision without obtaining additional medical evidence so long as other evidence in the record provides a sufficient basis for the ALJ's decision." *Naber v. Shalala*, 22 F.3d 186, 189 (8th Cir. 1994).

Based on these standards, the real question here is whether the record was "undeveloped" such that the ALJ had a duty to seek additional evidence from Al-Hameed's treating doctors. Judge Strand concluded that Al-Hameed's record was undeveloped based on *Nevland*. In *Nevland*, the administrative record contained "no *medical* evidence about how [the claimant's] impairments affect[ed] his ability to function now." 204 F.3d at 858. The record in *Nevland* established that the claimant suffered from dysthymia and ADHD. *Id.* But, the record was unclear as to "how these impairments . . . affect[ed] [the claimant's] residual functional capacity to do other work." *Id.* Although the record contained "numerous treatment notes," none of the claimant's treating "doctors was asked to comment on [the claimant's] ability to

function in the workplace." *Id.* Under these facts, the Eighth Circuit Court of Appeals held that the ALJ failed to properly develop the record before finding that the claimant was not disabled at Step 5, and remanded the case. *Id.*

*Nevland*, however, does not compel remand in every case in which the administrative record lacks a treating doctor's opinion. As the Commissioner points out, I recently held in *Agan v. Astrue*, 922 F. Supp. 2d 730, 756 (N.D. Iowa 2013), that the ALJ properly denied a claimant benefits without first obtaining a treating doctor's opinion on the claimant's work-related limitations. *Id.* In *Agan*, "the ALJ's RFC assessment [was] supported by substantial evidence in the record," and "[t]he ALJ did not rely solely on non-treating doctors to form an opinion on [the claimant's] RFC." *Id.* at 755. The claimant in *Agan* claimed a disability based on back pain. *Id.* at 752. Unlike in *Nevland*, the record in *Agan* contained "medical evidence following [the claimant's] last back surgery . . . which indicated that he was 'doing very well post-operatively.'" *Id.* at 755. "Physical examinations following [the claimant's] surgery indicated normal functioning of his extremities." *Id.* The record in *Agan* even contained evidence that, after his back surgery, the claimant "was working full-time with no limitations noted at his follow-up exam." *Id.* Based on this record, I found that "[t]he medical evidence, including physical examination treatment notes from the treating physicians, provide[d] sufficient support for a finding that [the claimant] was able to function in the workplace." *Id.* at 756. Thus, I held that the ALJ in *Agan* did not need to further develop the claimant's medical record. *Id.*

The record in the case at hand is more similar to *Nevland* than it is to *Agan*. In particular, I agree with Judge Strand's assessment that the record here contains insufficient evidence of "the nature and severity of Al-Hameed's impairments during the relevant period of time, including her symptoms, diagnosis and prognosis, what she is capable of doing despite the impairments, and the resulting restrictions." Report and

Recommendation 22 (docket no. 15). Simply put, there is no evidence—no party has cited any—of "how [Al-Hameed's mental] impairments . . . affect [her] residual functional capacity to do other work," or her "ability to function in the workplace." *Nevland*, 204 F.3d at 858. Thus, under *Nevland*, the ALJ did not properly develop the record and should have sought additional evidence from Al-Hameed's treating sources before making a Step-5 determination.

The Commissioner argues that the record here was sufficiently developed because it "contained plaintiff's mental health treatment records, an opinion from plaintiff's treating nurse practitioner, . . . and the opinions of two State agency psychological consultants . . ." (docket no. 16, at 13). Yet, the Commissioner cites no specific portion of the record discussing how Al-Hameed's mental impairments affect her ability to function in the workplace now. Instead, the Commissioner cites generally to over 70 pages of the record, suggesting that those pages contain "sufficient evidence" supporting the ALJ's decision: AR 390-412, 414-431, 480, 491-505, 635-641, 649-683 (docket no. 16, at 13). Out of these pages, the only medical treatment records are from B.J. Thomas (Thomas), a treating nurse practitioner. While those treatment records discuss Al-Hameed's mental condition over time, they do not themselves relate Al-Hameed's mental impairments to her ability to work. Thomas did provide an opinion questionnaire in which Thomas related Al-Hameed's mental impairment to her ability to work. But, ironically, the ALJ gave that opinion "no weight"—a conclusion that Judge Strand agreed was proper. AR 15. After giving Thomas's opinion "no weight," the ALJ was left to rely on the opinions of non-treating, State agency consultants. Under *Nevland*, those opinions alone do not provide substantial evidence supporting an ALJ's decision. 204 F.3d at 858. I therefore agree with Judge Strand that *Nevland* compels remand in this case.

### III. CONCLUSION

For the reasons discussed above, I adopt Judge Strand's R&R. On remand:

> 1.      The ALJ must re-weigh Dr. Steele's opinions. If the ALJ finds that they are not entitled to controlling weight, he shall explain that finding in detail and shall then provide good reasons for the weight to which he determines they are entitled.

> 2.      The ALJ must fully and fairly develop the medical evidence concerning Al-Hameed's mental RFC. At minimum, this will require that the ALJ obtain a medical opinion concerning Al-Hameed's mental RFC from either a treating source or, at least, a consultative examining physician.

> 3.      The ALJ must undertake a new analysis at Steps Four and Five to re-evaluate Al-Hameed's RFC and determine whether she is able to perform work that exists in the national economy. This may require the ALJ to obtain additional VE testimony.

Report and Recommendation 25-26 (docket no. 15). The Commissioner's decision is reversed, and this case is remanded for further proceedings consistent with Judge Strands R&R. The Clerk shall enter judgment against the Commissioner and in favor of Al-Hameed.

**IT IS SO ORDERED**.

**DATED** this 30th day of December, 2013.

_Mark W. Bennett_
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA